NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-283

A.M.

vs.

B.L. (and a consolidated case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, B.L., appeals from two extensions of an abuse prevention order issued pursuant to G. L. c. 209A, § 3 (209A order).  He contends that the District Court judges denied him due process and that the plaintiff, A.M., failed to show by a preponderance of the evidence that she had a reasonable fear of imminent serious physical harm.  We affirm.

Background.  On February 26, 2024, the plaintiff's mother filed a complaint for an abuse prevention order against the defendant on the plaintiff's behalf.[2]  In a supporting affidavit, the plaintiff averred that "[w]hile [she] was in school . . .

---

[1] A.M. vs. B.L.

[2] The plaintiff was seventeen years old at the time.

1

[she] was getting aggressive texts & threats . . . wishing [her] mother would die in a car accident, threatening to kick down [her] door to scream at [her]." The defendant threatened to "punish" her and to "come home and bust up in [her] house" and called her a variety of expletives and insults.

An ex parte hearing was held before a District Court judge that day. The plaintiff's mother testified that the defendant had sent the plaintiff threatening text messages for weeks and that, after a school counselor and resource officer reviewed the messages, they sent the plaintiff home and called the police, who in turn advised the plaintiff to seek a restraining order. After the plaintiff testified that she feared for her safety, the judge issued a temporary order. See G. L. c. 209A, § 4.

A two-party hearing was held before a second judge on March 14, 2024. Both parties were present and represented by counsel. The plaintiff testified that she and the defendant started dating in February 2023 and maintained an "[o]n and off" long-distance relationship since the defendant began to attend an out-of-State college in the spring of 2023. The plaintiff testified that in recent months the defendant had repeatedly threatened her in phone calls and messages. The plaintiff introduced as evidence a call log and printout of text and

Snapchat[3] messages from the defendant.  The defendant testified that he and the plaintiff called and messaged each other regularly and saw each other when he was in Massachusetts.  He confirmed that he had sent messages threatening to punish the plaintiff, scream in her face, kick down her door, and bust up her house.  In one of the messages, the defendant told the plaintiff that he hoped her mother would "die[] in a car accident today" and have "a nice closed casket wake."  The defendant testified that he sent the messages because he felt "frustrated" that the plaintiff did not want to attend his college, but he never actually intended to go to the plaintiff's home or harm her.  At the conclusion of the hearing, the judge ruled that the 209A order would remain in effect for ninety days, until June 12, 2024.

At a hearing on June 12, 2024, the plaintiff sought a one-year extension of the 209A order based on alleged violations of the order and the likelihood that the parties would encounter each other over the summer.  The defendant opposed the extension and denied that he had violated the order.  Neither party testified.  The second judge extended the order to August 1,

---

[3] "Snapchat is a social media platform that enables users to post 'stories,' which can include photographs or video recordings."  Commonwealth v. Rodriguez, 496 Mass. 627, 629 (2025).

2024, "just to keep everybody away from each other during the summer."

After the plaintiff alleged that the defendant violated the order, another hearing was held before the first judge on August 14, 2024.[4] The plaintiff testified that she had received several "no caller ID" calls and that, when she answered the calls, she heard noises, clips of songs, and on one occasion the defendant's voice. She reported the calls to the police because they terrified and intimidated her. The plaintiff also testified about past physical abuse, including occasions when the defendant threw his phone at the plaintiff, grabbed her by the neck and face, held her arms down, and pushed her against a door. The defendant elected not to testify, invoking his privilege under the Fifth Amendment to the United States Constitution. The defendant's mother testified that, prior to entry of the 209A order, the parties "seemed happy" and visited each other's houses, even though the plaintiff's parents had directed her not to see the defendant. The first judge ruled that the 209A order would remain in effect until December 28, 2024, and the defendant timely appealed from that order.

On November 29, 2024, an application for a criminal complaint was filed against the defendant for allegedly

_____

[4] On August 1, 2024, the 209A order was extended until August 14, 2024, by agreement of the parties.

4

violating the 209A order.  On December 27, 2024, a third judge conducted a hearing on the defendant's motion to dismiss the complaint and the plaintiff's request to further extend the order.  The plaintiff testified that she had been recently diagnosed with post-traumatic stress disorder (PTSD) and took medication to "stop the nightmares and night terrors and panic attacks in the middle of the night from the abuse that I've endured."  As an example of the abuse she experienced, she testified that the defendant had pulled out a gun from his nightstand and placed it under her jaw.  The defendant elected not to testify.  The third judge ruled that the 209A order would remain in effect until December 26, 2025, and the defendant appealed from that order also.

Discussion.  A decision to extend an abuse prevention order is reviewed "for an abuse of discretion or other error of law." Constance C. v. Raymond R., 101 Mass. App. Ct. 390, 394 (2022), quoting E.C.O. v. Compton, 464 Mass. 558, 562 (2013).  "[A] judge's discretionary decision constitutes an abuse of discretion where [the reviewing court] conclude[s] the judge made a clear error of judgment in weighing the factors relevant to the decision, . . . such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). The inquiry at a 209A extension hearing is "whether the

5

plaintiff has shown by a preponderance of the evidence that an extension of the order is necessary to protect her from the likelihood of 'abuse' as defined in G. L. c. 209A, § 1." Vera V. v. Seymour S., 98 Mass. App. Ct. 315, 317 (2020), quoting Iamele v. Asselin, 444 Mass. 734, 739 (2005). See Rauseo v. Rauseo, 50 Mass. App. Ct. 911, 913 (2001) ("At a hearing on the plaintiff's request for an extension of an order . . . the plaintiff is not required to re-establish facts sufficient to support that initial grant of an abuse prevention order"). If a plaintiff seeks an order based on having been subject to physical harm, the "'abuse' is the physical harm caused, and a judge may reasonably conclude that there is a continued need for the order because the damage resulting from that physical harm affects the victim even when further physical attack is not reasonably imminent." Callahan v. Callahan, 85 Mass. App. Ct. 369, 374 (2014). As we review the judges' decisions allowing the plaintiff's requests for extensions of her protective order, "we will not substitute our judgment for that of the trier of fact. We do, however, scrutinize without deference the propriety of the legal criteria employed by the trial judge and the manner in which those criteria were applied to the facts" (citation omitted). Iamele, supra at 741.

1. Due process. The defendant claims that the judge violated his due process rights by curtailing his right to

6

present evidence at the extension hearing. A defendant in a hearing conducted pursuant to G. L. c. 209A is entitled to due process, including a meaningful opportunity to be heard. See M.M. v. Doucette, 92 Mass. App. Ct. 32, 34 (2017). The judge must allow the defendant "an opportunity to address the material and determinative allegations at the core of a party's claim or defense and to present evidence on the contested facts." Idris I. v. Hazel H., 100 Mass. App. Ct. 784, 788 (2022). "This includes the defendant's right to testify, to present evidence, and to cross-examine the witnesses against [him]." Id.

We have carefully reviewed the record and conclude that the defendant was not deprived of these rights. The defendant contends that the first judge "created an impression of unfairness" at the August 2024 hearing by selectively reading text messages from the March 2024 hearing into the record. The judge had presided at the February 2024 ex parte hearing, but not the hearings in March and June, and indicated at the start of the August 2024 hearing that she was consulting notes to "get up to speed" on the case. After the defendant disputed the threatening nature of his text messages, the judge reviewed the previously admitted exhibit to confirm that, as she found at the ex parte hearing, the text messages evidenced "threatening behavior." The judge did not exhibit bias or partiality in so refamiliarizing herself with the record.

7

We disagree with the defendant's assertion that, during that same hearing, the first judge interrupted and "cut short" his presentation of evidence and argument.  After the defendant's counsel suggested that she could "shorten" her questioning of the defendant's mother, the judge responded, "I want you to have a full hearing; I want you to take as long as you want."  Although the judge proposed continuing the hearing to a later date to accommodate the schedule of the defendant's mother, she moved forward with the mother's testimony after the defendant objected.  The judge also agreed to the request of the defendant's counsel to make a final argument.

Nor did the first judge's rulings deprive him of his opportunity to present evidence or address the allegations against him.  See Idris I., 100 Mass. App. Ct. at 788.  Although the judge instructed that "[the defendant] can testify about how he was feeling, if he wants to testify," he elected not to.[5] Rather, the defendant called his mother as a witness with the intent to elicit testimony about statements that the defendant made regarding his "feelings" and "worries."  Because counsel's question called for hearsay as well as "speculation as to

_____

[5] We note that the judge was permitted to draw an adverse inference from the defendant's invocation of his privilege against self-incrimination.  See Frizado v. Frizado, 420 Mass. 592, 596 (1995).

8

another person's state of mind," Commonwealth v. Carver, 33 Mass. App. Ct. 378, 383 (1992), the judge did not abuse her discretion in sustaining the plaintiff's objection. The defendant was not prevented from presenting other evidence of his "efforts to move forward" after the 209A order was issued; his mother testified about his progress in college, his employment, steps he has taken to comply with the order, and his efforts to avoid contact with the plaintiff.[6]

Finally, the record does not support the defendant's claim that the third judge abused her discretion by prohibiting the defendant's two witnesses from testifying at the December 27, 2024 hearing as to his alleged violation of the 209A order. The plaintiff based her extension request on her recent diagnosis of PTSD caused by prior abuse by the defendant. At the hearing, counsel for the defendant told the judge that he wanted to call the two witnesses to testify about the "alleged violation of the restraining order" that "is at least part of the basis" for the plaintiff's extension request. At sidebar, the third judge explained that it was more appropriate for the two witnesses to testify in connection with the defendant's motion to dismiss the

---

[6] To the extent that the defendant raises other arguments related to interruptions in his mother's testimony not discussed here, we have not overlooked those arguments but conclude that they do not merit discussion. See Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).

9

criminal complaint. The judge did not abuse her discretion in finding that the witnesses' testimony was not relevant to the grounds on which the plaintiff sought the extension.

2. <u>Extensions of the 209A order</u>. As discussed earlier, the plaintiff must show by a preponderance of the evidence that an extension of the order is necessary to protect her from the likelihood of "abuse," which includes "placing another in fear of imminent serious physical harm." <u>Iamele</u>, 444 Mass. at 737, 739. The ultimate "criterion for extending the original order is a showing of continued need for the order." <u>Pike</u> v. <u>Maguire</u>, 47 Mass. App. Ct. 929, 929 (1999). A judge must examine "the totality of the circumstances of the parties' relationship," including the basis for the initial order as well as any changes in the relationship since then. <u>Iamele</u>, <u>supra</u> at 740-741. "[P]rior history of violence, threats, or hostility within [the relationship], serve as the necessary backdrop . . . for assessing the reasonableness of [a plaintiff's] fear." <u>Vittone</u> v. <u>Clairmont</u>, 64 Mass. App. Ct. 479, 487 (2005).

Where, as here, the judges did not make specific factual findings on the record, we consider whether they could have found, by a preponderance of the evidence, together with all permissible inferences, that the defendant placed the plaintiff in fear of imminent serious physical harm. See <u>Frizado</u> v. <u>Frizado</u>, 420 Mass. 592, 597 (1995); <u>G.B.</u> v. <u>C.A.</u>, 94 Mass. App.

10

Ct. 389, 396 (2018).  The plaintiff presented evidence that the defendant had repeatedly threatened and intimidated her.  He sent her messages stating that he was going to "scream" at her, kick down her front door, and "punish her."  Even after the 209A order was issued, the defendant continued to call her, which left her feeling terrified.  The defendant was physically abusive toward her on "several occasions" and threatened her with a gun.  It was within the judges' discretion to credit the plaintiff's account of these incidents.  See Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 140 n.3 (2006) ("We accord the credibility determinations of the judge who 'heard the testimony of the parties . . . [and] observed their demeanor,' the utmost deference" [citation omitted]).

The defendant contends that the judges abused their discretion in finding a reasonable fear of imminent harm because the defendant primarily resided out of State and there was evidence that the plaintiff maintained some contact with the defendant during the time she allegedly suffered abuse.  We disagree.  Even if we were to accept the defendant's position that the plaintiff was not at risk of harm because he did not permanently reside in Massachusetts, which we do not, the defendant regularly returned to Massachusetts during school breaks and also sent text and Snapchat messages from college threatening to come to the plaintiff's home.  As discussed, the

11

plaintiff testified about past physical abuse that caused her to reasonably fear the defendant.  See Vittone, 64 Mass. App. Ct. at 487.  She also testified that the defendant threatened to hurt himself after she tried to cut off communications.  See Constance C., 101 Mass. App. Ct. at 397.  This evidence was sufficient to allow the judges to find that the defendant caused the plaintiff to be in reasonable fear of imminent serious physical harm and that there was continued need for the 209A order.

Orders extending harassment prevention orders, dated August 14, 2024, and December 27, 2024, affirmed.

By the Court (Walsh, Toone, & Tan, JJ.[7]),

Clerk

Entered:  February 11, 2026.

---

[7] The panelists are listed in order of seniority.